IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| CHARLES P. GRIFFIN, ) | |
| ) | |
| Plaintiff, ) | Case No. CV 04-160-S-EJL |
| ) | |
| v. ) | ORDER |
| ) | |
| PRUDENTIAL INSURANCE COMPANY ) | |
| OF AMERICA, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

Currently pending before the Court is Defendant Prudential Insurance Company's Motion Regarding Standard of Review (Docket No. 10). In the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral arguments, the Court will address and resolve this pending motion without a hearing. Having carefully reviewed the record, and otherwise being fully advised, the Court enters the following Order.

I.

BACKGROUND

This is an appeal of a denial of long-term disability benefits pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq*. On August 16, 2004, Defendant filed a motion requesting an order from the Court determining the standard of

ORDER -1-

review applicable to its denial of benefits claim under the ERISA plan in the instant action. *Motion Regarding Standard of Review* (Docket No. 10).

In 1972, Charles P. Griffin ("Plaintiff") began his career with the Hughes Family Market ("Hughes") in California as a box boy. After Hughes was acquired by Ralph's Grocery Company ("Ralph's"), Plaintiff continued to work for the company, eventually holding the position of store manager. As a Ralph's employee, Plaintiff was covered by a long-term disability insurance policy (the "Plan"), which was serviced and administered by Disability Management Services, a wholly-owned subsidiary of Defendant Prudential Insurance Company of America ("Prudential").

In January 1999, Plaintiff ended his employment with Ralph's due to failed back syndrome and other medical issues. In June 1999, Plaintiff filed a claim for disability benefits under his long-term disability insurance plan. In July 1999, certain benefits under the Plan were approved. Payments were made through July 2001, when they were stopped after the plan administrator determined that Plaintiff no longer met the requirements under part 1(b) of the Plan's eligibility policy, *i.e.*, the administrator determined that Plaintiff's impairments did not prevent him from performing any job for which he was reasonably fitted by his education, training, or experiences.

Despite the initial denial, and after requests for reconsideration from Plaintiff, in March 2002, the plan administrator decided Plaintiff was eligible for benefits through July 23, 2002. Plaintiff appealed the decision yet again, noting post-operative lower back conditions and a cervical disc fusion and reporting symptoms of Meniere's disease. Thereafter, the administrator concluded that such impairments still did not meet the requirements of part 1(b) of the Plan.

ORDER -2-

This denial, the administrator concluded, was final and could not be further appealed.

On March 31, 2004, Plaintiff filed the Complaint (from which this motion derives) against Prudential alleging, *inter alia*, breach of fiduciary duty. *Complaint* (Docket No. 1). On August 16, 2004, Prudential filed the instant motion for an order determining the standard of review applicable to this case, *i.e.*, the standard of review in the Ninth Circuit Court of Appeals for the denial of benefits challenged by a former employee under 29 U.S.C. § 1132(a)(1)(B) when the plan administrator is a wholly-owned subsidiary of the insurance company that provides benefits under the plan. *Motion Regarding Standard of Review* (Docket No. 10).

On September 10, 2004, Plaintiff filed a motion requesting an order from the Court compelling discovery of the documentation requested in Plaintiff's Requests for Production Nos. 1, 5, 6, 7, and 8. *Motion to Compel* (Docket No. 13). On February 18, 2005, the Court granted Plaintiff's Motion to Compel while deferring ruling on the present motion. *Order* (Docket No. 19). Prudential's Motion for an order determining the standard of review applicable to this case is now ripe for the Court's determination.

## II.

## PROCESS FOR DETERMINING STANDARD OF REVIEW

The parties agree that *Atwood v. Newmont Gold Co. Inc.*, 45 F.3d 1317 (9th Cir. 1995), sets out the process for determining the standard of review in this case, a case arising from a challenge to the denial of benefits in which there is an apparent conflict of interest. *Memorandum in Support*, pp. 1–2 (Docket No. 11); *Response in Opposition*, p. 1 (Docket No. 12). In *Atwood*, the Ninth Circuit Court of Appeals held that, in cases where there is an apparent conflict of interest, a two-step process is applied to determine whether to invoke either a *de novo* or an

ORDER -3-

abuse of discretion review of the plan administrator's decision regarding benefits. *See also*, *Friedrich v. Intel Corp.*, 181 F.3d 1105, 1109 (9th Cir. 1999). That is, "[a] denial of benefits challenged under 29 U.S.C. § 1132(a)(1)(B) is reviewed *de novo* 'unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan,' in which case an abuse of discretion standard is applied." *Atwood.*, 45 F.3d at 1321 (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S. Ct. 948, 956–57, 103 L. Ed. 2d 80 (1989)).

The first step of the process requires the beneficiary to provide "material, probative evidence, beyond the mere fact of the apparent conflict, tending to show that the fiduciary's self-interest caused a breach of the administrator's fiduciary obligations to the beneficiary." *Friedrich*, 181 F.3d at 1109. If the beneficiary makes such a showing, the second step shifts the burden to the plan, which is then required to produce evidence showing that "the conflict of interest did not affect the decision to deny benefits." *Id*. If the plan does not meet its burden, the decision to deny benefits is reviewed *de novo* by the district court. *Id*. Otherwise, an abuse of discretion standard is applied. *See id*.

This two-step process is applicable only when the plan administrator has an apparent conflict of interest in the denial of benefits. *Id*. An "apparent" conflict of interest exists when a plan administrator is responsible for both funding and paying claims. *McDaniel v. Chevron Corp.*, 203 F.3d 1099, 1108 (9th Cir. 2000). In this case, Plaintiff and Prudential agree the plan administrator, Disability Management Services, had discretion under Plaintiff's plan to determine benefits eligibility and that it is a division of Prudential Insurance Company of America, the funding source of the plan. *Supplemental Memorandum in Support*, p. 3 (Docket No. 35);

ORDER -4-

*Response in Opposition*, pp. 1, 2 (Docket No. 12). In light of these undisputed facts, the parties agree that there is an apparent conflict of interest. *Supplemental Memorandum in Support*, p. 3 (Docket No. 35); *Response in Opposition*, p. 2 (Docket No. 12). Therefore, the two-step test for determining the standard of review is applicable.

### III.

### MATERIAL, PROBATIVE EVIDENCE

In applying the *Atwood* two-step test to determine the appropriate standard of review for a case such as this, the first step requires that Plaintiff, the beneficiary, provide material, probative evidence, beyond the mere fact of the apparent conflict, tending to show that the fiduciary's self-interest caused a breach of the administrator's fiduciary obligations to the beneficiary. *Friedrich*, 181 F.3d at 1109. Both parties acknowledge that the Ninth Circuit Court of Appeals recognizes that material, probative evidence of a conflict of interest may consist of 1) inconsistencies in the plan administrator's reasons, 2) insufficiency of those reasons, 3) procedural irregularities in the processing of the beneficiary's claim, or 4) rejection of the opinions of the beneficiary's treating physician where the rejection is not sufficiently supported by the record. *Memorandum in Support*, pp. 6–7 (Docket No. 11); *Memorandum in Opposition*, pp. 5–6 (Docket No. 28); *Nord v. Black & Decker Disability Plan*, 296 F.3d 823 (9th Cir. 2002), *overruled on other grounds by* 538 U.S. 822, 123 S. Ct. 1965, 155 L. Ed. 2d 1034 (2003).

**A.  Inconsistencies in Reasons for Denial**

The first category of evidence that may be material, probative evidence of a conflict of interest is evidence of inconsistencies in the reasons for denying benefits. As to this category, Plaintiff claims inconsistencies in the reasons for denial of benefits in regards to whether Plaintiff

ORDER -5-

1) had transferrable job skills, 2) was college-educated, and 3) could perform sedentary work.

First, Plaintiff claims that the August 27, 2001 denial letter, in giving reasons for the denial of benefits, noted that Plaintiff possessed transferrable skills for other jobs, while notes made by the plan administrator on November 28, 2000 indicated that Plaintiff's "past work experience would be a barrier to employment in that he had limited transferable skills." *Memorandum in Opposition*, p. 7 (Docket No. 28).  However, the November 2000 notes actually indicate that the only "real barrier" the vocational rehabilitation counsel noted to the plan administrator was that Plaintiff's transferrable skills may limit Plaintiff to looking for entry-level jobs because Plaintiff had worked twenty-five years with one employer and now had a goal to switch careers.  *Mossman Affidavit*, Exhibit 1, PRU 00052 (Docket No. 29).  Therefore, rather than being inconsistent, both the August 2001 letter and the November 2000 notes consistently indicate that Plaintiff had transferrable skills.

Second, Plaintiff claims that the August 27, 2001 denial letter, in giving reasons for the denial of benefits, indicated that Plaintiff was college-educated while the plan administrator's notes from December 10, 2003 confirmed Plaintiff was only a high-school graduate. *Memorandum in Opposition*, pp. 6, 7 (Docket No. 28).  On the contrary, the December 2003 Administrator's notes clearly indicate both that Plaintiff is a high-school graduate and that Plaintiff is "5 units short of a BS degree." *Mossman Affidavit*, Exhibit 1, PRU 00036 (Docket No. 29).  Therefore, both the August 2001 letter and December 2003 notes consistently recognize Plaintiff as being college educated.

Third, Plaintiff claims that denial letters from December 21, 2001 and March 28, 2002 were premised on a "belief that the Plaintiff could perform a full range of sedentary work," a

ORDER -6-

reason for denial that Plaintiff claims is inconsistent with the report of the hired medical consultant, Dr. Theodore H. Wallace, which stated that Plaintiff should be limited to semi-sedentary work activities. *Memorandum in Opposition*, p. 8 (Docket No. 28). On the contrary, the reasons for denial given in the December 2001 and March 2002 letters could not be inconsistent with the report from Dr. Wallace to which Plaintiff refers because that report was not written until November 5, 2003, well after the denial was reported. *Mossman Affidavit*, Exhibit 1, PRU 00313 (Docket No. 29). Because Dr. Wallace's report was not written until November of 2003, the reason for the denial of benefits in either the December 2001 or March 2002 letters could not have been based on Dr. Wallace's November 2003 report at all, let alone inconsistently.

Upon careful review, therefore, Plaintiff's claims do not support a finding that there were inconsistent reasons for denial of benefits.

### B. Insufficiency of Reasons for Denial

The second category of evidence that may be material, probative evidence of a conflict of interest is evidence of insufficiency of reasons for denying benefits. *Nord*, 296 F.3d 823. As to this category, Plaintiff points to the following: 1) the plan administrator's reliance on the opinion of an internal medicine specialist, rather than an ear, nose, and throat (ENT) specialist, concerning Plaintiff's claim of Meniere's disease; 2) the administrator's three-day surveillance of Plaintiff; 3) the reliance on the opinion of doctors who had frequently been used as consultants by Prudential and whose consultations usually resulted in opinions that claimants were ineligible for benefits; 4) Plaintiff's claim that there was ample objective evidence documenting Plaintiff's vertigo problem; and 5) Plaintiff's lack of success in finding work. *Memorandum in Opposition*,

ORDER -7-

pp. 9–12, 14 (Docket No. 28).

First, in alleging that the reasons for denial were insufficient, Plaintiff points out that after the appeals committee reviewed Plaintiff's medical information on September 30, 2003, it recommended that an ear, nose, and throat (ENT) specialist review Plaintiff's allegations of Meniere's disease. *Memorandum in Opposition*, pp. 8–9 (Docket No. 28). Despite the recommendation, the plan administrator did not seek the opinion of an ENT, but rather the opinion of an internal medicine specialist, Dr. Richard M. Luros, who opined that it was "quite apparent that Mr. Griffin quite clearly [wa]s not 'impaired for the purposes of performing the duties of any occupation since July 24, 2002,'. . . . " *Mossman Affidavit*, Exhibit 2, PRU 00335 (Docket No. 29). Aside from showing that the ENT-consultation recommendation was not taken, Plaintiff has not presented any evidence demonstrating that a qualified internal medicine specialist, such as Dr. Luros, could not sufficiently diagnose the presence of Meniere's disease. That is, there is no evidence demonstrating that Dr. Luros's opinion would be an insufficient reason to deny long-term disability benefits.

Second, Plaintiff alleges that the plan administrator's decision to conduct a three-day surveillance of Plaintiff suggests that the plan administrator questioned Plaintiff's disability allegations from the start. *Memorandum in Opposition*, p. 10 (Docket No. 28). The resulting surveillance video, which showed Plaintiff driving, among other things, was presented to Dr. Luros before Dr. Luros gave his medical opinion as to Plaintiff's disability allegations. *Id*. at 9–10. However, though Plaintiff has presented evidence that Dr. Luros relied on the video in forming his opinion, Plaintiff has not presented any evidence that the surveillance video could not have provided sufficient evidence for a valid medical opinion as to Plaintiff's disability

ORDER -8-

status. Therefore, there is no evidence demonstrating that the material in the video would be an insufficient reason to deny long-term disability benefits.

Third, Plaintiff notes that Prudential has frequently used Dr. Luros as a consultant. *Id*. at 11. Particularly, Plaintiff highlights that, as a Prudential consultant, Dr. Luros earned approximately $19,000 in 2002, and $31,000 in 2003, and that of thirty-nine reports reviewed by Dr. Luros, Dr. Luros opined in favor of the beneficiary in only three cases. *Id*. Therefore, Plaintiff alleges that Dr. Luros's opinions are biased against claimants. *Id*. However, while Dr. Luros's past payments by and report reviews for Prudential may show that Dr. Luros was potentially biased in Prudential's favor, they do not present evidence that his medical opinions were unfounded or unsupported. That is, Plaintiff has not presented evidence that Dr. Luros's medical opinions would be insufficient reasons upon which to base a claim denial.

Fourth, Plaintiff claims there was ample objective evidence documenting Plaintiff's vertigo problem. *Memorandum in Opposition*, p. 11 (Docket No. 28). However, the issue is not whether there was insufficient reason to conclude Plaintiff did not suffer from vertigo, but rather, whether there were insufficient reasons to conclude that Plaintiff was not totally disabled. Plaintiff has neither claimed nor presented evidence demonstrating that because there was objective evidence of vertigo, there were insufficient reasons to believe Plaintiff was not totally disabled.

Fifth, and finally, Plaintiff points to his lack of success in finding work. *Memorandum in Opposition*, p. 14 (Docket No. 28). However, Plaintiff does not present any evidence that his lack of job-hunting success indicates that there were insufficient grounds for a determination that Plaintiff was not totally disabled.

ORDER -9-

Therefore, on review, Plaintiff's claims do not demonstrate that the plan administrator had insufficient reasons to determine that Plaintiff was not totally disabled and therefore not eligible for long-term disability benefits.

### C. Procedural Irregularities in the Claim Processing

The third category of evidence that may be material, probative evidence of a conflict of interest is evidence of procedural irregularities in the processing of the beneficiary's claim. *Nord*, 296 F.3d 823. As to this category, Plaintiff alleges that several of Prudential's procedural policies were not complied with; those policies being that 1) physicians used for file reviews are to be independent, unbiased, and not affiliated with Prudential; 2) a case like Plaintiff's justifies the use of an independent medical exam, rather than a file review; 3) appeal decisions are to be made by different individuals; 4) different medical consultants are to be involved at each level of review; and 5) claims are to be immediately reviewed if Social Security subsequently determines a claimant is no longer disabled. *Memorandum in Opposition*, pp. 9, 15 (Docket No. 28).

First, Plaintiff alleges that, in noncompliance with its policies, Prudential did not use independent, unbiased, and non-affiliated physicians to review Plaintiff's file. *Id*. at 15. Specifically, Prudential used Dr. Luros, who had frequently reviewed files for Prudential. *Id*. Such a long history between Dr. Luros and Prudential does seem to indicate that Dr. Luros may be "affiliated" with Prudential. If so, use of Dr. Luros would be evidence of a procedural irregularity in handling Plaintiff's claim.

Second, Plaintiff alleges that Prudential used a file review in determining Plaintiff's eligibility for benefits, rather than an independent medical exam which, Plaintiff claims, would have been justified under Prudential's procedural policies. *Id*. at 15. On the contrary,

ORDER -10-

Prudential's guidelines clarify when an independent medical examination (IME) might be utilized, not when one must be utilized. *Mossman Affidavit*, Exhibit 3, PRU 01357 (Docket No. 29). Therefore, even though an IME might have been utilized under the policy, that an IME was not used did not violate a procedural requirement. Therefore, the use of the file review was not a procedural irregularity.

**Third, Prudential's appeals-committees' decisions on March 13, 2002 and September 30, 2003 were made by some of the same individuals, which Plaintiff alleges violated Prudential's policies.** *Memorandum in Opposition*, p. 15 (Docket No. 28). The policy to which Plaintiff points, however, actually states that full and fair reviews must provide that appeal decisions not be made by "[t]he individual who made the original adverse benefit decision," or a "subordinate of that individual." *Mossman Affidavit*, Exhibit 3, PRU 01578 (Docket No. 29). As Plaintiff does not allege that either the March 13, 2002 or September 30, 2003 committees included the individual who made the original adverse benefit decision, the composition of the March 2002 and September 2003 committees was not procedurally irregular.

Fourth, Plaintiff alleges that Prudential's policies require that a different medical consultant be involved at each level of review and that there was "no indication in the record that this requirement was followed." *Memorandum in Opposition*, p. 16 (Docket No. 28). Nonetheless, Plaintiff has neither alleged nor presented any evidence that this requirement was not followed. The first step of the standard-of-review determination process, *i.e.*, the material, probative evidence step, places the burden on the plaintiff to produce material, probative evidence. *Friedrich*, 181 F.3d at 1109. Merely asserting that there is "no indication in the record that this requirement was followed" is not sufficient to establish that there had been an

ORDER -11-

irregularity in the claim-processing procedure.

Fifth, and finally, Plaintiff alleges that, contrary to Prudential's procedural policy, "the award of Social Security Disability Benefits appears to have had little, if any, effect on the Plan Administrator's final decision to deny benefits." *Memorandum in Opposition*, p. 9 (Docket No. 28). Plaintiff correctly notes that it is Prudential's policy to "immediately review" a claim when it becomes aware that a claimant's Social Security has been terminated. *Id.*; *Mossman Affidavit*, Exhibit 3, PRU 01312 (Docket No. 29). However, as Plaintiff also notes, Plaintiff's Social Security Disability Benefits were awarded, not terminated. *Memorandum in Opposition*, p. 9 (Docket No. 28). Therefore, under the policy Plaintiff points to, it is not procedurally irregular that "the award of Social Security Disability Benefits appear[ed] to have little, if any, effect on the Plan Administrator's final decision to deny benefits." *Id*.

Having closely examined Plaintiff's allegations, the allegations do not establish significant procedural irregularities in Prudential's handling of Plaintiff's benefits. At most, Plaintiff has shown that Dr. Luros may be "affiliated" with Prudential due to Prudential's frequent consultations with Dr. Luros for claimant's file reviews.

### D. Rejection of Treating Physicians' Opinions

The fourth and final category of evidence that may be material, probative evidence of a conflict of interest is evidence of the rejection of the opinions of beneficiary's treating physician where the rejection is not sufficiently supported by the record. *Nord*, 296 F.3d 823. Along these lines, Plaintiff emphasizes that the opinions of the doctors with whom Prudential consulted, Drs. Luros and Wallace, differed from those of his treating physicians, Drs. Leess, Dechter, and Taban. *Memorandum in Opposition*, pp. 12–13 (Docket No. 28). For example, on September 7,

ORDER -12-

2001, Dr. Fred Leess, an ear, nose, and throat specialist, concluded that Plaintiff suffered from intractable vertigo caused by Meniere's disease. *Mossman Affidavit*, Exhibit 1, PRU 00141 (Docket No. 29). Next, on January 21, 2002, Dr. Asher H. Taban, who treated Plaintiff beginning in October of 2001, stated that Plaintiff had been totally disabled during treatment and had been advised not to perform any activities that required prolonged sitting, standing, lifting weight over fifteen pounds, bending, turning, or twisting, and that Plaintiff's surgery was scheduled for January 23, 2002, after which Plaintiff would remain totally disabled for at least four to six months. *Id*. at PRU 00142. Lastly, on February 13, 2002, Dr. Mark Dechter, who treated Plaintiff for several years, concluded that Plaintiff was disabled secondary to vertigo. *Id.* at PRU 00143.

Plaintiff claims that the opinions of his treating physicians conflicted with the opinions of Dr. Wallace and Dr. Luros. For example, in a letter dated November 5, 2003, Dr. Theodore Wallace concluded that he did not believe Plaintiff to be "totally disabled on the basis of his orthopaedic condition" but that the medical evidence supported Plaintiff's "physical impairment . . . that would limit him to semi-sedentary work activities." *Mossman Affidavit*, Exhibit 2, PRU 00330 (Docket No. 29). In a letter dated November 15, 2003, Dr. Luros concluded that it was "quite apparent that [the Plaintiff] quite clearly [wa]s not impaired for the purpose of performing the duties of any occupation since July 24, 2002." *Id*. at PRU 00335. However, Plaintiff's treating physicians concluded otherwise. Nonetheless, this category of potential material, probative evidence requires a showing of evidence of a rejection of the opinions of Plaintiff's treating physician where such rejection is not sufficiently supported by the record. Plaintiff's evidence, however, shows that both Dr. Luros and Dr. Wallace took the reports of Plaintiff's

ORDER -13-

treating physicians into consideration, as indicated in their respective letters.  Therefore, Plaintiff has provided no evidence that his treating physicians' opinions were rejected.

### E.  Conclusion

Considering all four categories of evidence, Plaintiff has not met his burden of providing material, probative evidence, beyond the mere fact of the apparent conflict, tending to show that the fiduciary's self-interest caused a breach of the administrator's fiduciary obligations to the beneficiary.  *Friedrich*, 181 F.3d at 1109.  Specifically, first, Plaintiff has not provided sufficient evidence of inconsistencies in the plan administrator's reasons for denial.  Second, Plaintiff has not provided sufficient evidence of insufficient reasons for denying benefits.  Third, Plaintiff has not provided significant evidence of irregularities in the claim-handling process.  Fourth, Plaintiff has not provided sufficient evidence of a rejection of Plaintiff's treating physicians' opinions, where such rejection was not sufficiently supported by the record. In short, Plaintiff has provided evidence of only one instance tending to show that fiduciary's self-interest caused a breach of the administrator's fiduciary obligations to the beneficiary.  That is, Plaintiff provided evidence that Dr. Luros, the doctor who reviewed Plaintiff's file for Prudential, may have been "affiliated" with Prudential, and that a file review by an affiliated doctor would be in contrast to Prudential's claim-handling procedures.  Still, Plaintiff also asserts that "[w]hat constitutes material, probative evidence of the fiduciary's self-interest generally must be determined on a case by case basis based upon whether the record, taken as a whole, reflects that the administrator acted as an adversary 'bent on denying [the beneficiary's] claim' and 'oblivious to her fiduciary obligations as administrator of the LTD plan.'"  *Memorandum in Opposition*, p. 6 (Docket No. 28) (quoting *Friedrich*, 181 F.3d at 1110).  Taken as a whole, this record does not support such a finding.

ORDER -14-

Therefore, Plaintiff has not met his burden in the first step of the standard-of-review determination process as laid out by the Ninth Circuit Court of Appeals in *Atwood*.

The *Atwood* two-step process results either in a review *de novo* or, rather, an abuse of discretion review of the administrator's decision regarding a denial of benefits. *Friedrich*, 181 F.3d. at 1109. *De novo* review results only if 1) Plaintiff meets his burden in the first step to provide material, probative evidence, beyond the mere fact of the apparent conflict, tending to show that the fiduciary's self-interest caused a breach of the administrator's fiduciary obligations to the beneficiary; and if 2) the Plan does not meet its burden in the second step to provide evidence showing that the conflict of interest did not affect the decision to deny benefits. *Id*. Here, Plaintiff has not met his burden in the first step, so it is of no consequence whether the Plan could provide evidence showing that a conflict of interest did not affect the decision to deny benefits. Further, because Plaintiff did not meet his first-step burden, the appropriate standard of review in this case is the abuse of discretion standard.

**IV.**

**ORDER**

In accordance with the conclusions stated above, IT IS HEREBY ORDERED that Prudential's motion for order determining the standard of review applicable to this case (Docket No. 10) is GRANTED.  The Court will apply an abuse of discretion standard of review to this case.



DATED:  **August 12, 2005**.

_____

Honorable Larry M. Boyle

Chief U. S. Magistrate Judge